WALTER H. GOODRICH & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93247.    Promulgated November 24, 1939.

*Irving J. Angell, C. P. A.,* for the petitioner.
*Conway Kitchen, Esq.,* for the respondent.

## OPINION.

STERNHAGEN: The Commissioner disallowed the deduction of $60,-000 claimed on petitioner's 1934 return as a "reasonable addition to a reserve for bad debts" (Revenue Act of 1934, sec. 23 (k)). In its original petition the petitioner still claimed the deduction as a bad debt reserve. By an amended petition it changed the claimed deduction to that of $20,000 addition to bad debt reserve by reason of the worthlessness of the Oil Products debt, and $40,000 loss sustained in its investment in Oil Products shares.

1. The deduction of a reasonable addition to a reserve for bad debts is permitted by the statute only in the Commissioner's discretion. Unless his refusal to permit such a deduction is capricious or arbitrary, or otherwise an abuse of discretion, the Board should be slow to override it. Certainly it may not merely substitute its judgment for that of the Commissioner as if the statute contained no

such condition and the Board were simply to decide *de novo* whether the claimed addition to the reserve were reasonable. *C. P. Ford & Co.*, 28 B. T. A. 156. See Paul and Mertens, Law of Federal Income Taxation, vol. 3, § 28.95 *et seq.*

From the stipulation it appears that at the beginning of 1934 the petitioner's reserve for bad debts was $86,749.97. To this it added in the taxable year $85,493.16 and the Commissioner in his discretion refused to allow $60,000, shown on the books as Oil Products stock $40,000 and Oil Products advances $20,000. The reason given to support the $20,000 deduction is that the debtor's financial condition was known to be such that there was no reasonable probability of its being repaid and so much of the debt was in fact worthless. Even if this were so, it would not of itself prove that this amount would be a reasonable addition to the reserve, for perhaps the reserve so far set up and deducted on prior returns was ample to take care of it.

But it can not from the evidence be held that in fact this amount was in 1934 irrecoverable. The lender and the borrower were affiliated, the lender and its controlling shareholder owning all the shares of the borrower. The account was for the sale price of merchandise, and whether the debtor could pay depended somewhat on how much profit its affiliate would permit it to make. Its operating ratio was to some extent in the control of its affiliate. Its gross sales were large and had been steadily growing, and we see no reason for its creditor to abandon hope in 1934. Indeed the creditor continued to make advances during that year and the following year. The failure of negotiations for the sale of the business to the Cities Service Co. in 1934 indicates nothing significant, for no evidence shows whether the asking price was reasonable. The business was in fact sold in 1936 to the Gulf Oil Corporation for $100,000, with which Oil Products was to discharge obligations of $50,000. Furthermore, the books show that the total debt was reduced in 1936 and 1937 by $74,000, which was a large part of the debt as it stood at the beginning of 1934 and over half of the amount at the end of 1934.

Petitioner argues that its business judgment should not lightly be disregarded. It is, however, not controlling and must be supported by the evidence. In this case, the evidence falls short of showing that the Commissioner has arbitrarily or unreasonably refused to allow the addition of $60,000 or $20,000 to the bad debt reserve.

2. The claim of $40,000 as a deduction for loss is essentially a contention that the 400 shares became totally worthless in 1934. This, however, can not be found from the evidence. The book value of the assets was less than the book liabilities, but this alone does not definitively prove worthlessness of the corporation's shares. Ap-

parently there was still room for hope for a satisfactory business or a satisfactory sale of it. Money was still being advanced to it thereafter and gross sales were growing. The discouragement of the officers about business prospects may have been well founded, but that is less than proof that the shares were worthless. Obviously a drop in value of the shares in any one year may not be treated as the realization of a loss. While an investment in shares may be deducted as a loss even though they have not been sold or disposed of, such a loss must be supported by a clear demonstration of worthlessness. There must be something which serves as the "identifiable event" to establish the loss.

The Commissioner's determination disallowing the deduction of $60,000 is sustained.

*Decision will be entered under Rule 50.*