MAJESTIC SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93280.   Promulgated September 19, 1940.

*Ellsworth C. Alvord, Esq., C. S. Dobson, Esq.,* and *Floyd F. Toomey, Esq.,* for the petitioner.

*R. P. Hertzog, Esq.,* for the respondent.

#### OPINION.

ARNOLD: This proceeding involves deficiencies for the calendar years 1934 and 1935 in the following amounts:

| Year | Income tax | Surtax (sec. 351) | Penalty (sec. 291) |
|------|-----------|-------------------|--------------------|
| 1934 | $2,155.00 | $2,858.61 | $714.65 |
| 1935 | 6,017.54 | | |

The issue presented is the basis to be used in computing gain or loss from the sale of securities acquired in 1932 and 1933.

The facts, except for an exhibit received in evidence, were stipulated.   We adopt the stipulated facts as our findings and hereinafter set forth that portion thereof deemed necessary to determine the issue presented.

The petitioner is a corporation organized, on June 22, 1932, under the laws of the State of Delaware, for the purpose of buying, owning, and selling stocks, bonds, and other securities.   Its principal office and place of business are located at Joplin, Missouri.   Its Federal income tax returns for the calendar years 1934 and 1935 were filed with the collector of internal revenue at Kansas City, Missouri.

The original capital stock issued by the petitioner amounted to 429 shares of the par value of $1,000 per share, for which the petitioner received $425,000 in cash and a note for $4,000.   Of the 429 shares issued by the petitioner upon its organization, 295¾ shares were issued to stockholders of the Conqueror First National Bank of Joplin, Missouri (hereinafter referred to as the bank), 99¼ shares and 33½ shares were issued to the daughter and wife, respectively, of J. G.

Starr, the principal stockholder of the bank, and one-half share was issued to the assistant cashier. Prior to April 29, 1933, petitioner acquired the shares issued to the daughter and wife of J. G. Starr, 16¼ shares issued to the Starr Investment Co., and the one share issued to J. G. Starr, or a total of 150 shares. Ownership of stock in petitioner was not in proportion to ownership of stock in the bank.

On June 24, 1932, the bank "sold to the petitioner certain securities and the petitioner paid to the [bank] the sum of $521,720.40. The respective amounts paid by the petitioner to the [bank] at the time the said securities were sold was equal to the cost thereof to the bank, and were all in excess of the respective prevailing market prices for said securities on June 24, 1932."

On April 29, 1933, the bank "sold to the petitioner certain securities and the petitioner paid to the [bank] the sum of $434,359.05. The respective amounts paid by the petitioner to the [bank] at the time the said securities were sold was equal to the cost thereof to the bank, and were all in excess of the respective prevailing market prices for said securities on April 29, 1933."

During the calendar year 1934, the petitioner sold securities in the open market (including some of the securities acquired from the bank on June 24, 1932 and April 29, 1933) receiving therefor $76,370.69. In its Federal income tax return for 1934 petitioner deducted a loss of $1,195.82 on account of the sale of securities during that year. In computing the loss of $1,195.82 petitioner used as its basis for the securities acquired from the bank on June 24, 1932, and April 29, 1933, the amounts paid to the bank representing the equivalent of the original cost thereof to the bank. The respondent determined that petitioner realized a gain of $16,532.40 from the sale of the same securities in 1934. In computing the gain of $16,532.40 the respondent used as the petitioner's basis for the securities acquired from the bank on June 24, 1932, and April 29, 1933, the prevailing market prices therefor on such dates.

During the calendar year 1935 the petitioner sold securities in the open market (including some of the securities acquired from the bank on June 24, 1932, and April 29, 1933) receiving therefor $155,191.63. In its Federal income tax return for 1935 petitioner included a gain of $5,384.25 on account of the sale of securities during that year. In computing the gain of $5,384.25 petitioner used as its basis for the securities acquired from the bank on June 24, 1932, and April 29, 1933, the amounts paid to the bank representing the equivalent of the original cost thereof to the bank. The respondent determined that petitioner realized a gain of $49,704.40 from the sale of the same securities in 1935. In computing the gain of $49,704.40 the respondent used as petitioner's basis the prevailing market prices of the securities acquired from the bank on June 24, 1932, and April 29, 1933.

Schedules attached to and made a part of the stipulated facts show the securities sold during each taxable year by the petitioner, the date of acquisition, the amount paid therefor, the prevailing market price, the amount received, and the gain or loss resulting from the sale of each security based on cost and based on the market price. The exhibit received in evidence confirms the sale to petitioner by the bank in June 1932 of the securities therein listed, and is receipted as paid in full, June 30, 1932.

Respondent's explanation for his adjustment as to each taxable year is as follows:

Certain securities sold were purchased from the First National Bank, Joplin, Missouri, at the bank's purchase price, irrespective of market price. Most of the securities were listed on exchanges and had a specific price on the date of transfer. It therefore appears that, since the securities so acquired could have been purchased on the open market, the amount paid in excess of the market price was for a purpose other than the acquisition of securities and the increase over market does not represent a part of the cost of the securities. Sections 22 (a) and 111 (a) of the Revenue Act of 1934.

Section 111 (a) of the Revenue Act of 1934 provides for the computation of gain or loss. It reads in part as follows:

The gain from the sale * * * of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

Section 113 (b) of the 1934 Act provides:

The adjusted basis for determining the gain or loss from the sale * * * of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

None of the adjustments provided for in subsection (b) apply in this proceeding.

Section 113 (a) of the 1934 Act provides that "The basis of property shall be the cost of such property; except that * * *."
None of the exceptions specified are applicable to this proceeding.

The Commissioner stated in his notice of deficiency that the amount paid was in excess of the market price and that the securities could have been purchased in the open market for less, and, therefore, determined that the amount paid in excess of the market price was "for a purpose other than the acquisition of securities and the increase over market does not represent a part of the cost of the securities." The Commissioner's determination has the support of a presumption of correctness and the petitioner has the burden of proving it to be wrong. *Welch* v. *Helvering*, 290 U. S. 111; *Burnet* v. *Houston*, 283 U. S. 223.

The parties have stipulated that the petitioner was organized for the purpose of buying, owning, and selling bonds and other securities;

that 295¾ shares of petitioner's 429 shares of stock were held by stockholders of the bank, although not in proportion to their respective bank stockholdings; that petitioner's remaining shares were owned by parties closely related to the stockholders of the bank or closely associated with the bank, all of which, except the one-half share of the assistant cashier, were acquired by petitioner prior to April 29, 1933; that petitioner acquired the securities from the bank at the cost of the securities to the bank, which was in excess of prevailing market prices at the time of acquisition; and that the schedule attached to and made a part of the stipulation shows the gain or loss on subsequent sales based (1) on the amount paid the bank, and (2) on the prevailing market prices at the time of acquisition. Upon these stipulated facts petitioner contends that it has fully met its burden, notwithstanding the Commissioner's determination that the excess paid was for a purpose other than the acquisition of the securities, and that the excess did not represent a part of the cost of the securities acquired from the bank.

The purchase price is ordinarily considered the proper basis for determining gain or loss on subsequent disposition, but there are exceptions to this rule, depending on special facts and circumstances. *Pennsylvania Indemnity Co.*, 30 B. T. A. 413; affd., 77 Fed. (2d) 92; certiorari denied, 296 U. S. 588; *Donald McDonald, Jr., Administrator*, 28 B. T. A. 64; *Harry F. Robertson*, 5 B. T. A. 748; *Rubay Co.*, 9 B. T. A. 133; *Frederick Ayer*, 6 B. T. A. 152; affd., 25 Fed. (2d) 534; *E. D. Knight*, 28 B. T. A. 188. The general rule that the price paid is the basis for determining gain or loss on future disposition presupposes a normal business transaction. *Pennsylvania Indemnity Co.* v. *Commissioner*, 77 Fed. (2d) 92. As petitioner was organized for the purpose of buying, owning, and selling stocks, bonds, and other securities, we must assume it carried on the business for which it was organized for profit. To pay for the securities acquired from the bank more than it could have purchased them for in the open market is inconsistent with normal business transactions. The stipulation is silent as to why petitioner paid the bank a price in excess of the market. If we take judicial notice of the fact that at the time petitioner was organized and the purchases were made there was a general business depression, *Great Northern Railway Co.* v. *Weeks*, 297 U. S. 135, and banks generally were seriously impaired, it would seem from the relationship of petitioner's stockholders to the bank that the purpose of causing the securities to be purchased from the bank at a price in excess of their market value at the time may have been to maintain the bank's solvency. Petitioner was controlled by certain stockholders of the bank through common stock ownership. The fact that petitioner's stockholders were all stockholders of the bank from

which the securities were purchased, with the exception of the assistant cashier of the bank and the wife and daughter of one of the principal stockholders of the bank, coupled with the fact that petitioner was used to purchase at a total price of $77,566.51 securities which could have been purchased for $59,838.29 in the open market, clearly shows the purchases were not normal business transactions. These facts indicate that part of the amount paid was for a purpose other than the acquisition of the securities, and that the excess paid was no part of the cost of acquiring the securities. Likewise, as to the securities sold in 1935, petitioner was used to purchase securities at a total price of $149,807.38 which could have been purchased in the open market for $105,487.23. We think it is a fact of considerable importance that petitioner did not pay in excess of the market price for securities acquired through other sources.

The stipulation does not state that the price paid was the "cost" of acquiring the securities from the bank; but petitioner would have us so infer. If the excess paid for the securities was not for a purpose other than acquiring the securities, petitioner should have produced evidence to that effect; otherwise the Commissioner's determination stands uncontroverted. Cf. *W. B. Brooks*, 12 B. T. A. 31; affd., *Brooks* v. *Commissioner*, 35 Fed. (2d) 178. Proof of essential facts can not be left to speculation and conjecture. Cf. *Swayne Lumber Co.*, 25 B. T. A. 335; *Wood Corporation of Delaware*, 22 B. T. A. 1182; affd., 63 Fed. (2d) 1023. The real question raised by the Commissioner's determination is whether the price paid in excess of the market was for a purpose other than the acquisition of the securities. We do not think the facts as stipulated are sufficient to overcome the Commissioner's determination. We think it was incumbent upon petitioner to go further and show that the amount paid was for no purpose other than the acquisition of the securities. This the petitioner has not done. If the rule that the price paid represents the basis for determining gain or loss was without exceptions, and if the Commissioner had not made a definite determination that the excess price paid was for a purpose other than the acquisition of the securities, there would be merit in petitioner's contention.

Our conclusion is supported by the stipulated changes in stock ownership in the petitioner and in the bank that occurred between June 22, 1932, and April 29, 1933. At the date of incorporation stockholders of the bank owned 68.94 percent of petitioner's stock; less than a year later stockholders of the bank owned 99.88 percent of petitioner's capital stock, and the only other stockholder was the assistant cashier of the bank. The elimination of nonbank stockholders from ownership of petitioner's stock was apparently accomplished by petitioner purchasing the stock so held, as it owned 150 shares of its own

stock and 1,000 shares of the stock of the bank on April 29, 1933. These facts, together with the facts aforementioned, show that petitioner was used by stockholders of the bank for the benefit of the latter. This use of petitioner indicates the business transactions were not normal, as the interests were not adverse and the acquisitions of the securities from the bank at a price in excess of the market were not arm's length transactions.

Furthermore, it should be noted that petitioner's transactions during the taxable years were primarily in securities acquired from the bank. The schedule attached to the stipulated facts shows that 10 of the 19 securities sold in 1934 and 20 of the 30 securities sold in 1935 were securities acquired from the bank. These circumstances, together with the other facts and circumstances herein, convince us that respondent correctly determined that part of the amount paid the bank did not represent cost of the securities, but was for a purpose other than the acquisition of the securities.

Petitioner has made no contention with regard to the surtax deficiency or the penalty, and respondent's determination with respect thereto is approved.

*Decision will be entered for the respondent.*