Herberich, Hall, Harter Agency, Inc. v. Commissioner.
Herberich v. Commissioner
Docket No. 2661.
United States Tax Court
1944 Tax Ct. Memo LEXIS 266; 3 T.C.M. (CCH) 420; T.C.M. (RIA) 44146; May 4, 1944
*266 Alfred Herberich, Esq., Ohio Bldg., Akron, O., and C. G. Rausch, C.P.A., 510 Metropolitan Bldg., Akron, O., for the petitioner. T. F. Callahan, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves tax deficiencies for the calendar year 1941 as follows: Income tax
$2,730.08
Declared value excess-profits tax
424.33
Excess-profits tax
495.95
The sole issue is the propriety of the disallowance of the sum of $7,500 as a long term capital loss representing the alleged worthlessness of 75 shares of the preferred capital stock of Theodore DeWitt Hotels, Inc. The case was submitted upon a stipulation of facts, exhibits and oral testimony. The stipulated facts are incorporated as our findings by reference. Any additional facts are found from the evidence. Findings of Fact The petitioner is an Ohio corporation with its principal office located at Akron, Ohio. The petitioner's return for the taxable year 1941 was filed with the collector of internal revenue for the eighteenth district of Ohio at Cleveland, Ohio. In 1935, on each of the respective dates of May 29, November 13, and December 9, the petitioner purchased 25 *267 shares of the preferred and 25 shares of the common capital stock of the Theodore DeWitt Hotels, Inc. The cost of each purchase was $2,525 or a total cost of $7,575. On each purchase a certificate for 25 shares of each class of stock was issued in the name of Charles Herberich, as nominee. At the time of the purchases and until his death on September 16, 1940, Charles Herberich was the president of the petitioner. Upon receipt of the respective stock certificates Charles Herberich immediately endorsed them for transfer. The certificates were then deposited in the petitioner's safe, to which Charles Herberich, as president, at all times had access. On December 27, 1937, the petitioner sold 25 shares of this preferred stock to Charles Herberich for $525 and made an entry upon its books on that date to that effect. In its income tax return for the year 1937 the petitioner claimed a loss of $1,975 on account of that transaction. On December 31, 1938, the petitioner sold the remaining 50 shares of this preferred stock to Charles Herberich for the sum of $500, which transaction was similarly recorded on the petitioner's books. In its income tax returns for the year 1938 the petitioner *268 claimed a loss of $4,500 on account of that transaction. The cost basis of the petitioner for the shares of preferred stock sold on December 27, 1937 to Charles Herberich for $525 and the 50 shares sold on December 31, 1938 to the same Charles Herberich for the sum of $500, was $7,500. In 1937 and 1938, Charles Herberich owned directly or indirectly (by reason of family ownership as the term is defined in section 24 (a) of the Revenue Act of 1936 and section 24 (b) of the Revenue Act of 1938) more than 50 percent in value of the outstanding stock of the petitioner. In July 1940, the Bureau of Internal Revenue informed the petitioner that the claimed losses were not allowable as deductions by reason of the provisions of section 24 (a) of the Revenue Act of 1936 and section 24 (b) of the Revenue Act of 1938. By entry made on December 23, 1940, as of July 1940, the said 75 shares of the preferred stock of Theodore DeWitt Hotels. Inc., were restored to the petitioner's books at their original cost and the account of Charles Herberich was credited with the amount of his purchase price of $1,025. On January 16, 1941, the certificates representing these 75 shares of the preferred stock *269 were sent to the Theodore DeWitt Hotels, Inc., for transfer on its books into the name of the petitioner. The Theodore DeWitt Hotels, Inc., filed dissolution proceedings in 1941 and a receiver was appointed. After liquidating the assets and the payment of all court and receivership expenses, the remaining assets were insufficient to pay general creditors in full. The petitioner in its 1941 return claimed a net long term capital loss of $7,500 on the ground that the said 75 shares of the preferred capital stock of the Theodore DeWitt Hotels, Inc., had become worthless in that year. It also claimed a loss of $75 on the common shares of said corporation. Respondent disallowed the former and allowed the latter. In July 1940, the petitioner reacquired by purchase the 75 shares of the preferred capital stock of the Theodore DeWitt Hotels, Inc., at a cost of $1,025. These 75 shares of the preferred stock became worthless in the year 1941. In 1941 the petitioner sustained a loss in the amount of $1,025 on account of those shares becoming worthless in that year. Opinion In his deficiency notice the respondent explained the adjustment with respect to the long term capital loss of $7,500, *270 representing the alleged worthlessness of the 75 shares of the preferred stock of the Theodore DeWitt Hotels, Inc., as follows: It is held that the alleged loss of $7,500.00 is not an allowable deduction within the provisions of section 23 of the Internal Revenue Code. The parties are in accord that the two sales of the preferred stock of the Theodore DeWitt Hotels, Inc., by the petitioner to its then president, Charles Herberich, in the respective years 1937 and 1938, were made in good faith and effected an absolute legal transfer of the title to the said shares. Nor is there any dispute that the losses resulting from those sales were not allowable deductions by the petitioner in the respective years, since the purchaser owned, directly or indirectly, more than 50 per cent of the stock of the petitioner. Respondent (1) attacks the bona fides of the transaction that took place in July 1940, when the petitioner and Charles Herberich attempted to reverse the former sales and restore the status quo ante and (2) takes the position that the preferred stock became worthless prior to 1941. The petitioner, upon ascertaining its mistake in view of the tax law, set about to reverse *271 the transactions of 1937 and 1938 by an agreement with the purchaser, its president, to return the 75 shares of preferred stock and receive back the consideration he had paid therefor. The petitioner argues that this transaction constituted a rescission, ab initio, of the original sales to its president, by means of which the stock remained in it and at its original cost basis of $7,500. We disagree. The petitioner's ownership of the stock was completely terminated by the sales of that stock in 1937 and 1938. Those contracts, though without tax consequence to petitioner, were valid and fully executed, and such fully executed contracts can not be rescinded by mutual consent. Merchants' Bank v. Hanna, 73 Fed. (2d) 818; Thane Lumber Co. v. J. L. Metz Furniture Co., 12 Fed. (2d) 701; Stearns v. central Petroleum Co., 93 Fed. (2d) 638. We therefore disregard the book entries as evidencing a rescission of the original contracts. This situation, however, does not contradict the existence of a new and separate contract between the same parties in reference to the same subject matter. Doyle v. Mitchell Bros. Co., 247 U.S. 179. *272 What was the actual nature of the transaction in 1940 which purported to be a rescission, since it is the fact and not what the parties intended that shall control? Weiss v. Wiener, 279 U.S. 333. Undoubtedly the 1940 transaction was no part of the original plan. It had its inception in the knowledge, learned subsequent to the complete execution of that plan, that the loss resulting from the original sales was not available for income tax purposes. The petitioner, in effect, agreed to buy and its president then agreed to sell the stock for $1,025, the amount which the president had originally paid therefor. There is no legal prohibition, of which we know, against the sale per se by a shareholder to a corporation of stock in another corporation. McKittrick v. Arkansas Cent. Ry. Co., 152 U.S. 473 Fletcher on Corporations, Vol. 3, Sec. 931. Petitioner's purpose in reacquiring the stock might have affected its basis therefor but it did not contradict the fact of reacquisition. See Estate of Jay R. Monroe, 45 B.T.A. 1060; affd., 132 Fed. (2d) 126; Majestic Securities Corp., 42 B.T.A. 698; *273 affd., 120 Fed. (2d) 12. We therefore conclude that petitioner acquired the 75 shares of preferred stock in controversy by purchase in 1940 from its president. It actually paid $1,025 at that time for the stock. Was any part of this consideration paid for something other than the stock? Cf. Estate of Jay R. Monroe, supra;Majestic Securities Corp., supra.We think not. Respondent argues that the stock was worthless throughout 1940, from which it would follow that none of the $1,025 allegedly paid for the stock on its reacquisition by petitioner was paid as consideration for the stock. Though not specific as to the amount, the evidence, admitted without objection of the respondent and uncontradicted, is that the stock had value throughout 1940. Likewise uncontradicted is the fact that petitioner actually paid $1,025 during that year for the stock. It is to be presumed that petitioner acted regularly in the premises, and paid no more than the then fair market value of the stock. United States Bank v. Dandridge, 12 Wheat. 64; Atlantic Refining Co. v. Port Lobos Petroleum Corp., 280 Fed. 934. *274 The respondent, as we have pointed out, did not specifically disallow the loss deduction on the ground that the stock did not become worthless in 1941. Though it does not appear that the common stock was involved in the 1937 and 1938 sales of the preferred stock in controversy, the deficiency notice evidences the tact that respondent allowed the petitioner to deduct the loss on the common shares of the Theodore DeWitt Hotels, Inc., as becoming worthless in the year 1941. His contention now that the preferred stock had no value prior to 1941 is obviously based upon the balance sheet of the Theodore DeWitt Hotels, Inc., as of December 20, 1940. The assets there appear as $213,559.72 and liabilities as $224,065.42, exclusive of capital stock, thus showing a resulting deficit of $10,505.70. Though this book deficit may be evidentiary of worthlessness, it does not necessarily establish that fact. Walter H. Goodrich & Co.,inc., 40 B.T.A. 960; Royal Packing Company v. Commissioner, 22 Fed. (2d) 536. The Theodore DeWitt Hotels, Inc., was engaged in the operation of a chain of hotels. It was so engaged in the year 1940 and continued *275 the operation of three hotels in the year 1941. In May 1941, its manager resigned from the corporation. The evidence shows that on account of his resignation the company determined to liquidate in June 1941. It appears that the company was a going concern in 1941. The president of the petitioner testified, and was not contradicted, that if the manager of the Theodore DeWitt Hotels, Inc., had remained with the company its operations would have been successful. Thus, we think the stock had potential value with reasonable expectation of improvement. Nelson et al. v. United States, 131 Fed. (2d) 301; Thompson v. Commissioner, 115 Fed. (2d) 661; Brown v. Commissioner, 94 Fed. (2d) 101. We therefore conclude and have so found that the petitioner purchased the 75 shares of preferred stock involved here in July 1940 at a cost basis of $1,025. Since the respondent apparently concedes that this stock was worthless at the end of 1941, our finding just discussed that it had value at the beginning of that year disposes of the controversy. The stock which petitioner purchased for $1,025 in 1940 became *276 worthless in the year 1941. Accordingly petitioner is entitled to a loss computed under the provisions of section 23, I.R.C.
Decision will be entered under Rule 50.