JOHN THUN, Petition v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thun v. Commissioner
Docket No. 3808-74.
United States Tax Court
T.C. Memo 1977-372; 1977 Tax Ct. Memo LEXIS 69; 36 T.C.M. (CCH) 1517; T.C.M. (RIA) 770372; October 27, 1977, Filed Joel H. Paget, for the petitioner. Thomas N. Tomashek, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $95,794.52 in petitioner's Federal income tax for the year 1970 and an addition to tax of $23,948.63 under Section 6651(a). [1] Concessions have been made by the petitioner. The only issue remaining for decision is whether petitioner's stock in Bamco Machine, Inc. became worthless in 1970 so that *70 he is entitled to a loss deduction under section 165(g) for that year. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. John Thun (petitioner) resided in Puyallup, Washington, at the time the petition was filed in this case. Petitioner filed his 1970 Federal income tax return with the district director, Tacoma, Washington. Bamco Machine, Inc., was incorporated under the laws of the State of Washington in July 1966. The incorporators were James L. Cissell, Betty Ann Cissell, and Clark Snure. The principal office of Bamco Machine was in Kent, Washington. Bamco Machine manufactured parts to customer specifications and assembled a variety of machined items principally for the aerospace industries. Petitioner invested in Bamco Machine between the fall of 1968 and the fall of 1969. At the close of 1970, petitioner owned 166,178 shares of Bamco Machine stock with a basis therein of $227,550. Upon his initial investments petitioner was named a director of Bamco Machine, Inc. He continued as a director in the successor *71 of Bamco Machine, Inc., known as Bamco Industries, Inc., which was formed when Bamco Machine merged with Titanium Forming Inc. and changed its name in January 1972. The merger was undertaken in an effort to reverse the serious financial difficulties then facing both Bamco Machine and Titanium Forming. (Hereinafter both Bamco Machine, Inc. and Bamco Industries, Inc. will be referred to as Bamco.) Bamco's difficulties began in 1967 and continued until its eventual demise in November 1973 when the Internal Revenue Service caused it to cease operations for failure to pay withholding tax. This history of financial difficulty is indicated by the following figures assembled from Federal corporate income tax returns filed by Bamco. Retained Taxable Year
Taxable
Earnings
Total Ended
Gross Sales
Income *
Balance
Assets
June 30, 1967
$559,069.07
$ 69,210.76
$ 63,050.94
$ 417,813.06
June 30, 1968
339,044.43
(93,901.41)
(2,544.89)
813,407.51
June 30, 1969
545,196.11
(334,955.70)
(385,384.67)
965,806.48
June 30, 1970
581,593.00
(400,613.00)
(788,188.00)
794,431.00
June 30, 1971
286,515.60
(298,711.12)
(1,076,838.83)
[8]19,498.20
June 30, 1972
862,537.00
(323,288.00)
(1,152,158.00)
1,550,266.00
*72 As shown in the above table, substantial sales occurred throughout the period but the amount realized by Bamco was insufficient to generate taxable income subsequent to 1967. The resulting losses mounted and weakened Bamco's financial condition so that relations with creditors became precarious. In the latter part of 1970, Bamco lost its line of credit with Seattle-First National Bank. The only financing for Bamco done by the bank subsequent to that time was on assignment of accounts receivable. Bamco's other major creditors, Walter R. Cotten and John B. Cotten, loaned Bamco $450,000 in 1967 and obtained a security interest in the machinery of Bamco until it ceased operations in November 1973. The Cotten loan also was secured by the holdings of Bamco in Titanium Forming, Inc. prior to their merger and by the personal guarantees of the major shareholders, directors, and officers of Bamco including the petitioner. Bamco had not paid any interest on the Cotten loan as of October 2, 1970, and under the provisions of the loan agreement the entire balance was subject to immediate payment. However, the Cottens *73 agreed to defer foreclosure on the collateral securing their loan. The minutes of a special meeting of the board of directors of Bamco held on April 19, 1971, indicate that the loan by the Cottens was still in default. The Cottens agreed, however, to accept common stock of Bamco in payment of interest on their loan to May 10, 1971. A new note, dated May 10, 1971, was to be issued to the Cottens to provide for amortization of their loan over a five-year period. The minutes of a special meeting of the board of directors of Bamco, held on October 23, 1971, state that at that time the Cottens agreed to take interest bearing notes for a period of time. Thus, the creditors of Bamco were in a position to foreclose on their loans as early as 1970. As shown on its Federal corporate income tax return for the year ended June 30, 1970, Bamco had total assets of $794,431 and total liabilities of $641,991.15. The financial statements for the period ended December 31, 1970, which were presented to the Board of Directors of Bamco Machine, Inc., showed assets as $744,792.14, liabilities as $666,423.87, and stockholders equity as $78,368.27. The entire balance sheet for December 31, 1970, is *74 as follows: Balance Sheet December 31, 1970 ASSETS
Petty Cash
$ 90.00
Cash in bank
(3,620.91)
Accounts Receivable
$ 39,158.11
Less allowance for doubtful accts.
966.15
38,191.96
Accounts Receivable - Other
123.44
Notes Receivable
2,435.00
Inventories: Raw Material
12,605.21
Work in Process
71,231.15
Finished Goods
16,592.77
Standards
3,904.53
104,333.66
Investments - Titanium Forming, Inc.
250,000.00
Treasury Stock
10,000.00
Machinery and Equipment
524,814.15
Less Reserve for Depreciation
211,945.76
312,868.39
Leasehold Improvements
43,162.91
Less Reserve
15,534.28
27,628.63
Employee Advances
24.00
Prepaid Expenses
2,717.97
Total Assets
$744,792.14
LIABILITIES AND STOCKHOLDERS EQUITY
Notes Payable
Bank
96,561.51
Stockholders
479,656.65
576,218.16
Accounts Payable
43,998.85
Accruals
Payroll Taxes
3,480.93
Excise Taxes
135.38
Property Taxes
8,293.16
Wages
2,599.99
Interest
20,180.38
34,689.84
Delta Sales Payable
11,500.00
Miscellaneous Liabilities
17.02
Capital Stock, Common
249,972.50
Paid In Surplus
751,180.85
1,001,153.35
Less Deficit
922,785.08
$744,792.14
*75 The assets shown in these figures included an investment in Titanium Forming, Inc., which was listed as $250,000. This investment arose in 1969 when Bamco subscribed to forty-eight percent of the shares of Titanium Forming. The purchase price of $250,000 was eventually paid by Bamco with $200,000 cash and 10,000 shares of its capital stock valued in the exchange at $5.00 per share. Financial difficulties prevented the transfer to Titanium Forming of what was to be its major asset: patents on the titanium forming process. These patents were issued on June 15, 1971 (U.S. Patent No. 3,584,487) and on September 21, 1971 (U.S. Patent No. 3,605,477) to Arne H. Carlson. Carlson signed an employment agreement in December 1969 in which he agreed to assign the patents upon issue in return for employment. Carlson never actually assigned the patents to Titanium Forming or Bamco since the compensation payments promised to him ceased in 1970. In 1974, Carlson assigned the patents to an unrelated corporation, Space Age Metal Forming. Bamco's major asset, therefore, was its equipment. The minutes of a special meeting of the Board of Directors of Bamco on October 2, 1970, indicate that *76 the appraised value of this equipment was between $400,000 and $500,000. Net proceeds which could have been realized if such equipment were sold at auction were approximately $350,000 to $440,000, which was less than the loan by the Cottens secured by the equipment. The assets shown on the balance sheet were insufficient to cover the liabilities of the corporation. In liquidation the stock would have had no value in 1970. Despite its difficulty with creditors, its lack of liquidation value, and its poor financial condition, Bamco made substantial sales each year until it ceased operations in November 1973. As shown in the retained earnings balance in the table supra,Bamco suffered losses in all taxable years subsequent to the one ending June 30, 1967. Prior to 1968, Bamco had been one of the major suppliers for Heath Techna. In 1969, however, Bamco started bidding directly to the Boeing Company and Heath Techna pulled all of its work out of Bamco. Bamco suffered operating losses in all subsequent years. In 1970, Bamco's primary customer was the Boeing Company for whom Bamco produced numerous short run jobs with immediate delivery. In the summer of 1970, Bamco also *77 received a sizable government contract for Robbins Air Force Base. Bamco hoped that this contract would alleviate the corporation's cash flow problem for nine months, but Consolidated Industries raised its prices on the forgings for this contract to $16 or $14 a piece from the $9.50 used by Bamco to prepare its bid for the contract. As an alternate remedy to its financial troubles, the Board of Directors of Bamco counted heavily on obtaining a long term multi-million dollar contract with General Electric in the fall of 1970, but the contract fell through in late 1970 or early 1971. In the face of these difficulties the petitioner and some others associated with Bamco were pessimistic about its chances for success and attempted to establish a loss for tax purposes via a sale of the stock. In late 1970 or early 1971, petitioner transferred his Bamco stock to Edna Nation for one dollar. Shortly thereafter all but 5,000 of the shares were returned to petitioner and then accepted by Seattle-First National Bank as security for petitioner's guarantor liability for loans to Bamco. In 1971, Bamco experienced an increase in orders. The minutes of a special shareholders meeting of Bamco *78 held on May 22, 1971, indicate that James Cissell reported a work backlog of Bamco, which arose in 1971, including orders from the Engine Division of General Electric and continuing work from Boeing. Cissell anticipated a considerable additional increase in volume due to several low bids. The minutes of a special meeting of shareholders of Bamco held on August 28, 1971, indicate that the merger with Titanium Forming, Inc. was discussed, and that gains in sales had been made based on work done for the Army, Navy, Air Force, and General Electric. Bamco was getting a lot of small orders in August 1971 and continued to have a work backlog. With respect to the merger the minutes state: The merger of the two companies will not of itself save either company. It is hoped that, by this consolidation, everyone involved will come closer to saving their [sic] investment. * * * Despite increased sales activity and attempts to save the company via merger, operating losses continued and the financial position of Bamco worsened as serious tax arrearages developed. At a meeting on June 1, 1973, the board recognized that active operations of the company had to be curtailed, since obtaining *79 additional borrowing or equity financing was unrealistic in light of its financial history. The board adopted a proposal by Seattle-First National Bank designed in part to preserve the titanium forming process of Bamco and to allow the company to survive in an inactive status until the titanium forming process could be established in the industry. The proposal was not successfully implemented. Attempts to sell Bamco during August and September 1973 were similarly unsuccessful. Bamco continued to operate until creditors caused it to cease operations in November 1973. On his Federal income tax return for 1970 petitioner claimed a long-term capital loss of $227,549 on the sale of 166,178 shares of Bamco stock. Respondent disallowed the loss. In contesting respondent's determination petitioner abandoned the contention of a loss via sale. Instead, he claims the stock became worthless in 1970. ULTIMATE FINDING OF FACT Petitioner's stock in Bamco did not become worthless in 1970. OPINION The sole issue before us is whether petitioner's stock in Bamco became worthless in 1970. If so, petitioner is entitled to a deduction for that year under section 165(g) which provides *80 that, if any security [2] held as a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange of a capital asset on the last day of the taxable year. The burden of proof is on the petitioner to overcome respondent's determination that his stock in Bamco did not become worthless in 1970. Boehm v. Commissioner,326 U.S. 287, 294 (1945); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner contends that a lack of liquidation value, a history of operating losses and certain other factors are sufficient indications that the stock was worthless in 1970. Respondent, on the other hand, contends that petitioner's stock became worthless subsequent to 1970 because Bamco continued operations and had substantial sales until November 1973. We agree with respondent. A determination of worthlessness is "purely a question of fact," Boehm v. Commissioner,supra at 293. Although each case necessarily turns on its own facts, well-defined criteria for determining worthlessness *81 have been developed. A taxpayer need not be an "incorrigible optimist" as to the value of his stock, United States v. S.S. White Dental Mfg. Co.,274 U.S. 398, 403 (1927), but he must show worthlessness by a lack of liquidation value and by certain identifiable events indicating there is no reasonable expectation that the stock may later become valuable. Morton v. Commissioner,38 B.T.A. 1270, 1278(1938), affd. 112 F. 2d. 320 (7th Cir. 1940). The potential value of Bamco stock in the event of liquidation in each of the years of Bamco's existence is not entirely clear. The evidence consists largely of financial statements which are generally unreliable as a basis for estimating value in liquidation since book value and market value of assets may have very little correlation. But, on this record, we find that the Bamco stock had no liquidation value in 1970. This finding is supported by several facts. First, as shown on the December 31, 1970 balance sheet the current liabilities of Bamco exceeded its current assets. Its checking account was overdrawn and it was unable to meet the obligations to its major creditors, Seattle-First *82 National Bank and the Cottens. Moreover, the investment in Titanium Forming, Inc. was listed as $250,000, which was an overstatement of its current value in light of the financial difficulties of Titanium. Finally, appraisals indicated that Bamco's other major asset, its equipment, would bring at auction less than the loans against which the equipment was pledged. From these facts we conclude that petitioner has established that his Bamco stock had no liquidation value in 1970. However, contrary to petitioner's contentions, the most important factor indicating worthlessness is not liquidation value. Lack of liquidation value is a necessary element of worthlessness but, standing alone, it is insufficient. Petitioner must also prove that in addition to lack of liquidation value "certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it" have occurred and thereby terminated any hope or expectation of potential value of the stock. Morton v. Commissioner,38 B.T.A. at 1278; Walter H. Goodrich and Co., Inc. v. Commissioner,40 B.T.A. 960, 962-63 (1939), appeal dismissed *83 (2nd Cir. 1942). Thus, our finding that Bamco stock had no liquidation value in 1970 is not tantamount to a holding that the stock became worthless in that year. We think the petitioner has failed to establish the additional requisite element that there was no reasonable expectation of potential value in 1970. It is true that petitioner was pessimistic in 1970 as to the future value of the stock. Worthlessness, however, is determined by an objective rather than a subjective standard, Boehm v. Commissioner,326 U.S. at 292, and several objective indicia of potential value did exist here. First, despite operating losses, Bamco had substantial sales throughout its existence. For the taxable year ended June 30, 1970, Bamco had sales of $581,583. That figure dropped to $286,515 in the following taxable year, but rose to $862,537 for the taxable year ended June 30, 1972. Such a continuing operation of the business is a strong indication that despite a history of operating losses the stock was not worthless in 1970. Bullard v. United States,146 F. 2d 386, 388 (2d Cir. 1944); Hull's Estate v. Commissioner,124 F. 2d 503, 504 (2d Cir. 1942) *84 affg. a Memorandum Opinion of this Court, cert. denied 316 U.S. 690 (1942). Moreover, rather than resigning itself to the prospect of bankruptcy or liquidation the management of Bamco took steps designed to preserve its viability and chances of success. Aggressive bidding policies were followed to obtain sufficient work to enable continued operations, albeit at a loss, in the hope of a market upswing. Merger with Titanium Forming, Inc. was undertaken to obtain the innovative titanium forming process which was hoped to form the basis for future success of Bamco. As late as 1973, when the financial plight became severe, Bamco was attempting to negotiate a sale or to survive in an inactive status to preserve the titanium forming process. All these circumstances support the conclusion that the Bamco stock had potential value beyond 1970. The fact that these efforts were unsuccessful and Bamco ceased operations in 1973 does not negate this value. Rather the cessation of business in 1973 is an identifiable event suggesting that the Bamco stock became worthless in 1973. Similarly, although the titanium forming process was eventually sold to another corporation in 1974 *85 after Bamco's default for the years in question here, the process was pledged by contract to Bamco and was an indication that Bamco might become successful if it could weather its financial difficulties and later fulfill its contractual obligations to the inventor of the process. A further indication that the stock was not worthless in 1970 is the fact that value was ascribed to the stock subsequent to 1970 by Bamco's creditors. The Cottens deferred foreclosure on the collateral securing their loan and agreed to accept Bamco stock in payment of interest on their loan to May 10, 1971. In 1971, petitioner recovered all but 5,000 shares of his stock from Edna Nation, to whom he had transferred the stock in an unsuccessful attempt to establish a tax loss via a sale. The stock recovered by petitioner was then accepted by Seattle-First National Bank as security for petitioner's guarantor liability for loans previously incurred by Bamco. We think these creditors would have been unwilling to forego foreclosure or to receive the stock in lieu of interest or as security if there were no reasonable expectation the stock might later become valuable. In view of the strong indicia of value *86 established in this record, we discount the conclusory testimony of petitioner and another director of Bamco, George Eberting, that the stock was worthless in 1970. [3] And we find the cases upon which petitioner relies factually distinguishable from the circumstances in the instant case. Although Bamco suffered financial difficulties in 1970 and many of these same difficulties are necessarily present in the year the stock of any corporation might become worthless, the other facts present herein preclude a conclusion that the Bamco stock became worthless in 1970. *87 In light of all the facts and circumstances we find that in 1970 there was a reasonable expectation that the Bamco stock might later have become valuable. Consequently, we hold that the Bamco stock did not become worthless in 1970. To reflect the concessions made by petitioner and our conclusion on the disputed issue, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
*. Before net operating loss deduction and special deductions.↩
2. Security is defined for purposes of section 165(g) to include stock. Section 165(g)(2)(A).↩
3. The testimony of petitioner and Eberting must also be considered in light of their equivocal dealings in the stock. Petitioner recovered the stock after a "sale" to a friend for one dollar and later used it as security. Eberting testified he could find no purchaser for the stock, but transfered it to his father-in-law and on his 1970 income tax return claimed a loss of $1,200 on the sale of his stock in which he had a $3,000 basis. His explanation of the transactions involved was at times vague and inconsistent. We therefore view the opinion testimony of petitioner and Eberting as little help in determining if Bamco stock was actually worthless in 1970. Moreover, considering the surrounding circumstances, their dealings with the stock also are questionable indications of worthlessness. Rather, their dealings merely indicate that petitioner and Eberting considered the tax benefit to be gained by establishing a 1970 loss to be greater than the value they personally ascribed to the Bamco stock.↩